**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CENTENE PHARMACY SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | No. 4:24-cv-00804-SEP |
| ) | |
| CAREMARK PCS HEALTH, L.L.C., *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Stay Discovery, Doc. [30]. The motion is fully briefed and ready for disposition. *See* Docs. [31], [32]. For the reasons set forth below, the motion is denied.

### BACKGROUND

This case involves a dispute between Plaintiff Centene Pharmacy Services, Inc., and Defendants Caremark PCS Health, L.L.C., and CVS Caremark Part D Services, L.L.C., (collectively, "Caremark") concerning certain provisions of the parties' contractual agreements. Centene "provides managed care and health insurance services to individuals and families throughout the country." Doc. [21] ¶ 1. Centene hired Caremark to manage its pharmaceutical benefits program. *Id.* ¶ 3. The parties' relationship was "governed by the Pharmacy Claims Processing Agreement ('Pharmacy Agreement') and the Prescription Benefit Services Agreement for Medicare Part D ('Part D Agreement') (collectively, the 'Agreements')." *Id.* Under the Agreements, Caremark processed Centene's pharmaceutical drug reimbursements. *Id.* ¶ 5. To that end, Centene "funded its own earmarked bank account . . . , [and] Caremark [ ] used the money from that account to pay pharmacies for drugs dispensed to Centene's members." *Id.*

According to Centene, "[o]ver the past years, the Department of Justice exposed a sprawling price-fixing conspiracy between generic pharmaceutical manufacturers to illegally raise prices, including for drugs acquired by Centene's members and paid for using Centene's earmarked bank account." *Id.* ¶ 6. And even though "Centene ultimately paid for the drugs its members bought at CVS pharmacies, including overcharges stemming from the conspiracy, it lacks federal antitrust standing to sue for those losses under the Sherman Act and certain state antitrust laws." *Id.* ¶ 7. To account for such a situation, "the Agreements require Caremark to

1

assign any claims to Centene's Plan Sponsors or Part D Plan Sponsors where only a Caremark Affiliate has standing to pursue the claims." *Id*. Because "CVS Pharmacy is a Caremark Affiliate with exclusive standing to pursue federal antitrust claims over Centene's purchases at CVS pharmacies," Plaintiff alleges, the conditions for assignment have been triggered, but Caremark refuses to assign the generic drug antitrust claims to the Plan Sponsors under the Agreements. *Id*. ¶¶ 7-8.

Plaintiff seeks a declaration of the rights and obligations of the parties under the Agreements and specific performance requiring Caremark to cause CVS Pharmacy to assign federal and certain state antitrust claims. *Id*. at 14. Defendants filed a Motion to Dismiss, Doc. [22], and then moved for a stay pending the Court's ruling on the motion to dismiss. Doc. [30].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), a party may move the court for a protective order staying or limiting the scope of discovery; however, a court may issue such an order only upon the movant's showing of good cause. *See T.E. Connectivity Networks, Inc. v. All Systems Broadband, Inc.*, 2013 WL 4487505, at * 1 (D. Minn. Aug. 20, 2013). "It, of course, is black letter law that the mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay." *Id*. at *2 (quoting *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y.2006)). In determining whether to stay discovery pending disposition of a motion to dismiss, courts consider the following four factors:

(1) whether the movant has shown a likelihood of success on the merits of the dispositive motion;

(2) hardship or inequity to the moving party if the matter is not stayed;

(3) prejudice to the non-moving party [if the matter is stayed]; and

(4) the conservation of judicial resources.

*Physicians Home Health Infusion, P.C. v. UnitedHealthcare of the Midwest, Inc.*, 2019 WL 4644021, at *3 (E.D. Mo. Sept. 24, 2019). The decision to stay discovery is "generally practical and . . . left largely to the court's discretion." *Id*. (quoting *Dufrene v. ConAgra Foods, Inc.*, 2016 WL 10651947, at *2 (D. Minn. Apr. 7, 2016)).

## DISCUSSION

Even assuming that Defendants have shown a likelihood of success on the merits of their motion to dismiss, the Court finds that none of the other factors weigh in favor of granting a stay.

Defendants argue that "allowing discovery to proceed while Defendants' motion to dismiss is pending would subject Defendants to potentially burdensome and expensive discovery."  Doc. [31] at 5.  According to Defendants, discovery "may require the parties to search for and produce documents, including electronic communications, going back over a decade," and "may require deposition testimony from witnesses who were involved in the negotiation and drafting processes for both the agreements and their amendments."  *Id*.  Those arguments are unpersuasive at this stage of this case.  As Defendants concede, "this case involves a limited set of claims and parties."  *Id*.  Moreover, the parties have not even served discovery requests, so any claim that discovery will be "burdensome" and "expensive" is speculative at this point.  *See Wild v. Rockwell Labs, Ltd.*, 2020 WL 1892307, *2 (W.D. Mo. Apr. 16, 2020) ("Defendants acknowledge that Plaintiff has yet to propound discovery.  As a result, Defendants have not shown that the breadth of unserved discovery supports a stay.").  And as Plaintiff notes in its response, "[Plaintiff] does not anticipate beginning any depositions until after the motion to dismiss has been ruled [on]."  Doc. [32] at 6.  So it appears that the parties agree that at least some discovery can be delayed until the motion to dismiss is ruled on.  Under such circumstances, the Court cannot find that Defendants will face hardship or inequity if the matter is not stayed.  Thus, the second factor weighs against a stay.

Although a closer call, the third factor also weighs slightly against a stay.  Even though this case is in its early stages, Plaintiff claims it will be prejudiced by a stay of discovery.  Because the contract at issue was entered into in late 2013, Plaintiff asserts that there is a heightened risk of lost evidence or diminished witness recall.  Doc. [32] at 8.  Plaintiff also maintains that "the longer this case remains pending, the increased chances CVS Pharmacy makes litigation decisions that may prejudice the claims which are rightfully Centene's."  Doc. [32] at 9.  Plaintiff raises legitimate concerns, and while the Court recognizes Defendants' argument that Plaintiff's commencement of this action nearly three-and-a-half years after CVS filed its antitrust complaint cuts against a finding of prejudice, the Court does not find that Plaintiff's delay weighs so heavily as to tip the balance in favor of Defendants on this factor.

Finally, the fourth factor weighs against a stay.  In determining whether a stay would conserve judicial resources, "a court examines the breadth of any pending discovery and whether the pending dispositive motion has the potential to resolve the litigation."  *Physicians Home Health Infusion*, 2019 WL 4644021, at *6 (quoting *Dufrene*, 2016 WL 10651947, at *4).  While

3

it is true that Defendant's motion to dismiss has the potential to resolve the entire case, this case involves a limited set of claims and parties, and the breadth of discovery is speculative at this point. Further, it appears that the parties may be able to limit the scope of discovery while the Court considers Defendants' motion to dismiss. As such, the Court finds that the fourth factor weighs against granting Defendants' motion to stay.

For the foregoing reasons, Defendants have failed to show that a stay is warranted in this case. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay Discovery, Doc. [30], is **DENIED**.

Dated this 6th day of January, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE